IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division

| | |
|---|---|
| MITSUBISHI CHEMICAL COMPOSITES AMERICA, INC., | ) ) ) |
| Plaintiff, | ) ) ) |
| v. | ) ) ) CIVIL ACTION NO. 2:19-cv-216 |
| PPG INDUSTRIES, INC., | ) ) ) |
| Defendant. | ) ) ) |

## REPORT AND RECOMMENDATION

Before the Court is Defendant PPG Industries Inc.'s ("Defendant") Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) and accompanying memorandum. ECF Nos. 10-11. Plaintiff Mitsubishi Chemical Composites America, Inc. ("Plaintiff"), filed a Response in Opposition, ECF No. 19, and Defendant filed a Reply to Plaintiff's Response. ECF No. 24. This matter was referred to the undersigned United States Magistrate Judge ("undersigned") pursuant to a Referral Order from the United States District Judge. ECF No. 25; *see also* 28 U.S.C. §§ 636(b)(1)(B) & (C); Fed. R. Civ. P. 72(b); E.D. Va. Local Civil Rule 72. The Court held a hearing on this matter on October 24, 2019. ECF No. 26. For the following reasons, the undersigned recommends that Defendant's Motion to Dismiss, ECF No. 10, be **GRANTED** as to Counts II and VI and that those Counts be **DISMISSED WITH PREJUDICE**; be **GRANTED** as to Counts IV and V and that those Counts be **DISMISSED WITHOUT PREJUDICE**; be **DENIED** as to Count III; and that Plaintiff be **GRANTED** leave to amend with respect to Counts IV and V.

1

# I. FACTUAL AND PROCEDURAL BACKGROUND

To resolve Defendant's Motion, the Court accepts as true the following factual allegations in the Complaint. Plaintiff is a manufacturer of panels. ECF No. 1 at ¶ 2. Defendant manufactures paint and stain products. *Id.* at ¶ 1. Between 1997 through 2005, Plaintiff contracted with Defendant to purchase paint coatings, which included fluroethylene vinyl ether ("FEVE") clear coat paint. *Id.* at ¶ 12. Plaintiff and Defendant entered into subsequent purchase orders to purchase fluoropolymer paint coatings and FEVE clear coat paint in or around December 2003, February 2004, and October 2004. *Id.* at ¶ 14. The purchases are covered by the Master Warranty Agreement ("MWA") issued by Defendant on or around October 10, 1998. *Id.*

> The MWA provides that:
>
> KEELER & LONG/PPG[1] warrants, subject to the conditions of this Agreement, that a Product, when properly factory machine applied to and cured on a properly cleaned, treated and primed Metal Substrate, will not:
>
>> A. Peel, check or crack (except for slight crazing or cracking as may occur on normal roll-forming or brake bending and which is accepted as standard, or when cracking or crazing is the result of metal fracture in the case of aluminum or spangle cracking of the zinc layer in the case of galvanized steel); or,
>>
>> B. Chalk in excess of a numerical rating 8, as measured using the procedures of ASTM D-4214-89 (Method D-659); or,
>>
>> C. Fade or change color in excess of 5 E units (Hunter Color Difference), as measured using the procedure of ASTM D-2244-85, comparing an unexposed retain panel to the exposed panel after removal of dirt and chalk.
>
> The above warranties (the "Performance Warranties") shall be 20 YEARS from the installation of the Metal Substrate coated with the Product or 21 YEARS from application of the Product to the Metal Substrate, whichever first occurs[.]

---

[1] Prior to Defendant, Plaintiff had a business relationship with Keeler & Long. Defendant purchased Keeler & Long in or around 1994. ECF No. 2, attach 1 at ¶ 12.

2

ECF No. 11, attach 1 at 2. On or around November 17, 2004, Plaintiff applied Defendant's polyvinylidene fluoride ("PVDF") color coat and FEVE clear coat to its manufactured panels. ECF No. 1 at ¶ 18. The panels were subsequently installed on the Birck Building on Purdue University's campus in West Lafayette, Indiana on or around December 1, 2004. *Id.* at ¶¶ 19, 21. In or around May 2016, Purdue University employees reported to Plaintiff that the FEVE clear coat supplied by Defendant was peeling and demanded that Plaintiff remediate. *Id.* at ¶ 22.

Plaintiff notified Defendant of the FEVE clear coat peeling, and began remediation of the Birck Building. *Id.* at ¶¶ 23, 24. On or around June 3, 2016, Plaintiff advanced a warranty claim to Defendant seeking indemnification in connection with remediation. *Id.* at ¶ 24. Defendant denied the warranty claim on or around August 29, 2016. *Id.* at ¶ 26. Plaintiff sought reconsideration of its warranty claim, and Defendant again denied the claim stating: (i) the material peeling off the Birck Building was not Defendant's FEVE clear coat paint, and (ii) alternatively, if it was Defendant's clear coat paint, the peeling resulted from errors related to Plaintiff's application. *Id.* at ¶¶ 27, 28.

Plaintiff seeks $369,291 for costs it incurred to complete the first phase of remediation, and $677,436 for the estimated costs of the second phase of remediation, which is ongoing. *Id.* at ¶ 31. In addition to these two phases of remediation, Plaintiff alleges there are "additional areas of the Birck Building that pose a potential threat for future liability." *Id.*

## II. STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 8(a), "[a] pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." *See Rehbein v. CitiMortgage, Inc.*, 937 F. Supp. 2d 753, 760 (E.D. Va. 2013). When deciding a motion to dismiss brought pursuant to Federal Rule of Civil Procedure 12(b)(6), the

Court must determine whether the complaint alleges sufficient facts "to state a claim to relief that is plausible on its face . . . [, which requires] more than labels and conclusions – a formulaic recitation of a cause of action's elements will not do[;. . . it] must be enough to raise a right to relief above the speculative level." *Bell Atlantic Corp. v Twombly*, 550 U.S. 544, 555, 570 (2007) (citations omitted); *see also Ashcroft v. Iqbal*, 556 U.S. 662 (2009). In *Twombly*, "[b]ecause the Plaintiffs here have not nudged their claims across the line from conceivable to plausible, their complaint was dismissed." *Twombly*, 550 U.S. at 570.

> In keeping with these principles a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

*Rehbein*, 937 F. Supp. 2d at 760 (quoting *Iqbal*, 556 U.S. at 679). That means "well-pleaded allegations are taken as true and the complaint is viewed in the light most favorable to the Plaintiff." *Venkatraman v. REI Sys. Inc.*, 417 F.3d 418, 420 (4th Cir. 2005); *see also Conley v. Gibson*, 355 U.S. 41 (1957). "Overall, '[d]etermining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" *Rehbein*, 937 F. Supp. 2d at 760 (quoting *Iqbal*, 556 U.S. at 679).

### III. <u>ANALYSIS</u>

#### A. Count II: Breach of Implied Warranties

Defendant moves to dismiss Count II of the Complaint because it effectively disclaimed all implied warranties in the MWA. *See* ECF No. 11 at 5-7. Plaintiff argues that the disclaimer

4

of implied warranties was not sufficiently conspicuous to be an effective disclaimer. ECF No. 19 at 2-5.

Under Pennsylvania law[2], the implied warranties of merchantability and fitness for a particular purpose may be disclaimed. *See* 13 Pa. C.S. § 2316(b). To disclaim the implied warranty of merchantability, the language must "mention merchantability" and, if written, must be "conspicuous." *Id.* To disclaim the implied warranty of fitness for a particular purpose, the disclaimer must be in "writing and conspicuous." *Id.* The Pennsylvania Uniform Commercial Code defines conspicuous as "so written, displayed, or presented that a reasonable person against whom it is to operate ought to have noticed it." 13 Pa. C.S. § 1201(10).[3] *See Allen-Myland, Inc. v. Garmin Intern., Inc.*, 140 A.3d 677, 690 (Pa. Super. Ct. 2016) (finding that a reasonable person, who has airplane passengers' lives at stake, would read the pilot's guide and notice the disclaimer). A heading satisfies the conspicuous requirement if it is "in capitals equal to or greater in size than the surrounding text, or in contrasting type, font or color to the surrounding text of the same or lesser size." Language in the body of a text satisfies the conspicuous requirement if it is "in larger type than the surrounding text, in contrasting type, font or color to the surrounding text of the same size by symbols or other marks that call attention to the language. *Id.* Whether a disclaimer is conspicuous is a question of law for the Court. *Id.*;

---

[2] The MWA provides that "[t]his Agreement is made under Pennsylvania law (without giving effect to the conflict of law principles thereof) and the local law of Pennsylvania shall apply to the construction, enforcement, and interpretation of this Agreement." ECF No. 11, attach. 1 at 5. At the hearing, both parties agreed that Pennsylvania law applies to their claims.

[3] Courts in Pennsylvania have been unclear about whether the court is to consider the sophistication of the parties when determining the conspicuousness of a warranty disclaimer. *Compare Vartek, LLC v. Axiall, LLC*, Civil Action No. 2:18-cv-01455, 2019 U.S. Dist. LEXIS 48468, at *12 n.1 (W.D. Pa. Mar. 22, 2019) ("The Court agrees with Plaintiff that these cases do not consider sophistication of the parties when determining conspicuousness.") *with Mack Trucks, Inc. v. BorgWarner Turbo Sys.*, No. 08-2621, 2011 U.S. Dist. LEXIS 29680, at *21 (E.D. Pa. Mar. 22, 2011) (finding that the parties were "sophisticated parties bargaining at arm's length" and holding a disclaimer sufficiently conspicuous). In any event, this Court finds that the statutory language allows a court to consider "the person against whom [the disclaimer] is to operate. 13 Pa. C.S. § 1201(10).

*Chauncey v. Peco, Inc.*, No. 08-cv-4131, 2010 U.S. Dist. LEXIS 13037, at *19 (E.D. Pa. Feb. 16, 2010) ("Conspicuousness is a question of law.").

In determining whether language intending to disclaim implied warranties is conspicuous, courts consider "the disclaimer's placement within the warranty document, the size of the typeface in which the disclaimer appears, and the use of typographic styles, colors, and highlighting to call attention to the disclaimer." *IMAX Corp. v. Capital Ctr.*, 156 F. Supp. 3d 569, 578 (M.D. Pa. 2016) (holding that a disclaimer which appeared in a seven-page schedule attached to the conditions of a lease, in boldface type and underlined heading, unlike the surrounding provisions, was sufficiently conspicuous such that a reasonable person ought to have noticed it). Courts have held that regardless of where they appear in a document, disclaimers displayed in bolded letters, or all capital letters may be sufficiently conspicuous. *See id.*; *Allen-Myland, Inc.*, 140 A.3d at 689 (holding that a disclaimer was conspicuous where it was at the very front of a pilot's guide and written in all capitals); *D&D Transp. v. Freightliner, L.L.C.*, No. 1:07-CV-00960, 2008 U.S. Dist. LEXIS 26644, at *15 (M.D. Pa. Apr. 2, 2008) (holding that disclaimers of implied warranties were sufficiently conspicuous when they were in a separate paragraph with all capital letters and italicized, even though the font was the same size as the surrounding text); *Philadelphia Elec. Co. v. GE Power Generation Serv. Div.*, CIVIL ACTION NO. 97-4840, 1999 U.S. Dist. LEXIS 19420 at *22 (E.D. Pa. Dec. 21, 1999) (holding that a waiver in all capital letters was conspicuous); *Thermo King Corp. v. Strick Corp.*, 467 F. Supp. 75, 78 (W.D. Pa. 1979) (finding a disclaimer conspicuous where no other language in the warranty appeared in all capital letters).

In *Vartek, LLC v. Axiall, LLC*, the court held that a disclaimer which appeared on a two-page agreement, in which the disclaimer was the only paragraph in all capital letters was

6

sufficiently conspicuous. Civil Action No. 2:18-cv-01455, 2019 U.S. Dist. LEXIS 48468, at *9-11 (W.D. Pa. Mar. 22, 2019). The disclaimer was conspicuous even though the text was only in one-sixteenth inch font, and it appeared on the bottom of the second page in paragraph twelve. *Id.* The holding in *Vartek* contrasted with holdings in *Borden, Inc. v. Advent Ink Co.*, 701 A.2d 255, 261 (Pa. Super. Ct. 1997) and *Moscatiello v. Pittsburgh Contractors Equip. Co.*, 595 A.2d 1190, 1194 (1991), where disclaimers that were only one-sixteenth inch font were held inconspicuous. *Id.* In *Borden*, the font size was one-sixteenth of an inch, but additionally, all of the text on the label containing the disclaimer was bolded, and the lines preceding the capitalized disclaimer were also in capital letters. 701 A.2d at 260-61. In *Moscatiello*, the disclaimer was "some of the 'finest' print [the] court had ever read." 595 A.2d at 1194. The heading on the front of the contract directing a reader to the disclaimer was inconspicuous and misleading, and buried in the middle of the page. *Id.* The court distinguished both *Borden* and *Moscatiello* because unlike those cases, the disclaimer in *Vartek* included factors that called attention to the disclaimer, such as a clear heading and the fact that the disclaimer was the only capitalized section of the document. *Id.* The court emphasized that "courts have created an option between capitalized text and other styles that draw attention to that section of the document" and such a disclaimer is conspicuous as long as it is "unlike the surrounding provisions of the agreements in which they are located." *Id.*

> The disclaimer in the MWA between PPG and MCCA states:
>
> Except for the Performance Warranties, KEELER & LONG/PPG MAKES NO OTHER WARRANTIES, EXPRESS OR IMPLIED, INCLUDING ANY IMPLIED WARRANTY OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE OR USE, WITH RESPECT TO ANY OF THE PRODUCTS.

ECF No. 11, attach. 1 at ¶ 9.

7

Considering the above factors, the Court finds that the disclaimer is conspicuous. The Court first notes that the "reasonable person against whom [the disclaimer] is to operate" here is a customer of Defendant. *See* 13 Pa. C.S. § 1201(10). The disclaimer appears in a writing that specifically mentions merchantability and fitness for a particular purpose. Although the font size is small, the disclaimer is displayed in all capitalized text in the body of the MWA and is the only capitalized text throughout the document other than the Defendant's name. *See Vartek*, 2019 U.S. Dist. LEXIS 48468 at *11-12. The MWA is only four pages long, single-sided, and the disclaimer appears on page three. The disclaimer follows a heading on page two of the MWA which states "THIS WARRANTY IS SUBJECT TO THE FOLLOWING CONDITIONS" which is bold, underlined, and in a larger font than the rest of the page. Based on these considerations, the Court finds the disclaimer is conspicuous, and that Plaintiff should have noticed it.

Therefore, the undersigned **RECOMMENDS** Defendant's Motion to Dismiss Count II be **GRANTED** and **DISMISSED WITH PREJUDICE**, as any amendment would be futile.

### B. Count III: Unjust Enrichment

Defendant argues that Plaintiff's claim for unjust enrichment must be dismissed because Plaintiff's claims are based on a written agreement—namely the MWA. Plaintiff argues that the claim for unjust enrichment is pleaded in the alternative, which is permissible under the Federal Rules of Civil Procedure.[4] ECF No. 1 at 8; ECF No. 19 at 5-6.

"Courts typically allow a plaintiff to plead both a breach-of-contract claim, and an unjust-enrichment claim only where there is some dispute as to whether a valid, enforceable written

---

[4] It is unclear whether Plaintiff is pleading unjust enrichment in the alternative to Count I—the breach of express warranty claim, in which the writing precluding an unjust enrichment claim would be the MWA, or Count IV—the breach of contract claim, in which the writing precluding an unjust enrichment claim would be the 1998 purchase agreement and other purchase orders. *See infra.* Part III.C.

contract exists." *Montanez v. HSBC Mortg. Corp. (USA)*, 876 F. Supp. 2d 504, 516 (E.D. Pa. 2012). If there is a dispute about whether a valid and enforceable contract exists, a plaintiff may plead alternative theories of recovery based on breach of contract and unjust enrichment, even though the plaintiff cannot recover for both. *Premier Payments Online, Inc. v. Payment Sys. Worldwide*, 848 F. Supp. 2d 513, 527 (E.D. Pa. 2012).

Plaintiff argues against dismissal because "it is unclear whether Defendant intends to challenge 'the existence and validity of the agreements at issue." ECF No. 19 at 6. In its Reply, Defendant has "acknowledge[d] the existence and validity of the MWA." ECF No. 24 at 5. At the hearing, Counsel for Defendant relied on the "expectation" that Defendant would not challenge the validity of the MWA. However, Plaintiff informed the Court that it does not have a copy of the MWA signed by both parties. Although Defendant contends that it does not expect to challenge the validity of the MWA, by failing to file an Answer[5] wherein such a contention may have been admitted, the Court cannot rely on Defendant's non-binding assertions in a brief and equivocal statements at a hearing to dismiss Plaintiff's unjust enrichment claim. *See Wartella v. Guardian Life Ins. Co. of Am.*, No. 3:15-CV-0614, 2017 U.S. Dist. LEXIS 54192, at *12 (M.D. Pa. Apr. 7, 2017) (stating that the court is "reluctant" to treat a statement in a brief as a judicial admission). Because the Court does not have Defendant's Answer, it is uncertain whether Defendant contests the MWA, and if so, to what extent. Moreover, in the event Plaintiff is pleading unjust enrichment in the alternative to breach of contract based on the purchase agreement and purchase orders, and not the MWA, *see infra*, Part III.C., Defendant has conceded that it cannot acknowledge the existence and validity of those agreements. ECF No. 24 at 5. Accordingly, at this stage in the litigation, it would be premature to dismiss Plaintiff's unjust enrichment claim. *See United States v. Kensington Hosp.*, 760 F. Supp. 1120, 1135 (E.D. Pa.

---

[5] Defendant could have filed an Answer along with its Motion to Dismiss, but chose not to.

9

1991) (denying dismissal of an unjust enrichment claim and noting that "[i]f appropriate, defendants may raise the issue later in a motion for summary judgment after discovery has been completed."). Accordingly, the undersigned **RECOMMENDS** Defendant's Motion to Dismiss Count III be **DENIED**.

### C. Count IV: Breach of Contract

Defendant moves to dismiss Plaintiff's breach of contract claim because it is based on the MWA, which would make it duplicative of the allegations in Count I—Plaintiff's claim for breach of express warranty. ECF No. 11 at 8-9. In response, Plaintiff argues that the breach of contract claim is not based upon the MWA, but rather is based upon the 1998 purchase agreement, and three purchase orders from December 2003, February 2004, and October 2004, which are separate and distinct from the warranty agreement. ECF No. 19 at 6.

A breach of contract claim which rests upon the same allegations as a warranty claim is duplicative and subject to dismissal. *Cooper-Booth Transp. Co., L.P. v. Daimler Trucks of N. Am., LLC*, No. 5:17-cv-3884, 2018 U.S. Dist. LEXIS 69338, at *10 (E.D. Pa. Apr. 23, 2018). Additionally, "[t]o state a claim for breach of contract under Pennsylvania law, a plaintiff must plead the following elements: (1) the existence of a contract, including its essential terms; (2) the defendant's breach of duty imposed by the terms; and (3) actual loss or injury as a direct result of the breach." *Angino v. Wells Fargo Bank, N.A.*, 666 F. App'x 204, 207 (3d Cir. 2016). If a plaintiff fails to plead the essential terms of the contract, the Court is unable to draw reasonable inferences to determine whether the claim is plausible in accordance with the standard on a motion to dismiss. *Compare Shad v. Delta Air Lines, Inc.*, No. 14-5509, 2015 U.S. Dist. LEXIS 52017, at *31 (E.D. Pa. Apr. 20, 2015) (citing *Iqbal* and stating that plaintiff failed to plead the existence of a contract or any terms that the court could conclude the parties had agreed to a

contract) *with Yeoman v. State Farm Fire & Cas. Co.*, No. 5:17-cv-04159, 2018 U.S. Dist. LEXIS 87427, at *5-6 (E.D. Pa. May 22, 2018) (holding that plaintiff sufficiently plead breach of contract where plaintiff plead the existence of an insurance policy and alleged that the insurer was to cover losses to the insured property as an essential term).

To the extent Plaintiff relies on the MWA for its breach of contract claim, the claim is duplicative of Plaintiff's claim for breach of express warranty and is subject to dismissal. *See Cooper-Booth Transp. Co., L.P.*, 2018 U.S. Dist. LEXIS 69338, at *10 (dismissing Plaintiff's breach of contract claim because it is based on the same allegations as the warranty claims). But, to the extent Plaintiff bases its breach of contract claim on the 1998 purchase agreement and the purchase orders, Plaintiff's claim is woefully insufficient. Plaintiff did not attach the purchase agreement or purchase orders to the Complaint, nor did Plaintiff plead *any* terms, let alone the essential terms of those agreements. From the information Plaintiff provided in the Complaint, the Court is unable to determine what portion of those agreements Plaintiff claims Defendant breached, and whether Plaintiff has a plausible claim for relief.

Therefore, the undersigned **RECOMMENDS** Defendant's Motion to Dismiss Count IV be **GRANTED** and **DISMISSED WITHOUT PREJUDICE**. However, because there may be facts regarding the essential terms of purchase agreements and purchase orders, and Defendant's alleged breach of those terms which were not pleaded, and which, if asserted, may flesh out Plaintiff's breach of contract claim, the undersigned also **RECOMMENDS** that Plaintiff be given leave to amend its Complaint as to this claim.[6]

---

[6] Plaintiff requests leave to file an amended complaint should the court find any defect in the Complaint. ECF No. 19 at 10. The Court may grant leave to amend for any defect in the Complaint that may be cured by an amendment. *See Phillips v. Cty. of Allegheny*, 515 F.3d 224, 245 (3d Cir. 2008) ("if a complaint is subject to a Rule 12(b)(6) dismissal, a district court *must* permit a curative amendment unless such an amendment would be inequitable or futile.") (citing *Alston v. Parker*, 363 F.3d 229, 235 (3d Cir. 2004) (emphasis added)).

### D. Count V: Indemnification

The parties do not dispute that a seller has the right to seek indemnification from the manufacturer of a defective product. *See* ECF No. 24 at 7. Instead, Defendant argues Plaintiff's indemnification claim must be dismissed because Plaintiff was under no legal obligation to remediate the Birck Building, which is a necessary element of a common law indemnity claim. *Id.*

"Under Pennsylvania law, indemnity is available only (1) 'where there is an express contract to indemnify,' or (2) where the party seeking indemnity is vicariously or secondarily liable for the indemnitor's acts." *Allegheny Gen. Hosp. v. Philip Morris*, 228 F.3d 429, 448 (3d Cir. 2000) (citing *Richardson v. John F. Kennedy Mem'l Hosp.*, 838 F. Supp. 979, 989 (E.D. Pa. 1993). Absent an express contract to indemnify, the party seeking indemnification must rely on common law indemnification. *Bank v. City of Phila.*, 991 F. Supp. 2d 523, 530 (E.D. Pa. 2014). Common law indemnity arises "out of a relationship that *legally compels* the defendant to pay for the act or omission of a third party." *Id.* (citing *Morris v. Lenihan*, 192 F.R.D. 484, 489 (E.D. Pa. 2000)) (emphasis added). In *Phila. Elec. Co. v. Hercules, Inc.*, an environmental cleanup case, the court held that a company who made a voluntary payment to clean up a property could not recover for common law indemnity without showing that the other party was "legally liable and could have been compelled to satisfy the claim." 762 F.2d 303, 317 (3d Cir. 1985). It is not enough for a party seeking indemnity to show that it *may* have been held liable if it had not settled. *Id.* (emphasis added). Instead, "actual legal liability must be shown." *Id.*; *see also PPG Indus. v. Cent. Indus. Maint., Inc.*, No. 05cv1193, 2006 U.S. Dist. LEXIS 11997, at *9 (W.D. Pa. Mar. 21, 2006) (noting that under Pennsylvania law, an indemnitee must prove that it

was liable to another entity before proceeding with an indemnification claim against an indemnitor).

Here, Plaintiff has alleged no facts indicating that it was legally obligated to pay to remediate the Birck Building. Although at the hearing Plaintiff indicated that it was under an obligation to remediate, Plaintiff did not clarify the nature of that obligation. Absent additional facts regarding Plaintiff's "actual legal liability" to remediate the Birck Building, Plaintiff cannot maintain an indemnification claim against Defendant. *See Phila. Elec. Co.* 762 F.2d at 317.

Accordingly, the undersigned **RECOMMENDS** Defendant's Motion to Dismiss Count V be **GRANTED** and **DISMISSED WITHOUT PREJUDICE**. Again however, the Court notes that there may be additional facts Plaintiff could plead regarding its legal liability to remediate, and therefore the undersigned also **RECOMMENDS** that Plaintiff be given leave to amend its Complaint as to this claim.

### E. Count VI[7]: Declaratory Judgment

Defendant argues that a declaratory judgment in this action is unnecessary because it is duplicative of Plaintiff's Count I breach of express warranty claim and would serve no purpose to clarify the parties' rights and interests. ECF No. 11 at 10. Plaintiff argues that a declaratory judgment is necessary because "there are additional areas of the Birck Building that pose a potential threat for future liability." ECF No. 1 ¶ 58.

District courts "may declare the rights and other legal relations of any interested party seeking such declaration." 28 U.S.C. § 2201(a).[8] A declaratory judgement is a "forward-looking mechanism, intended to guide parties' behavior in the future." *Merino v. EMC Mortg. Corp.*, No.

---

[7] Plaintiff inadvertently labelled Count V for both its indemnification and declaratory judgment claims. The Court refers to Plaintiff's declaratory judgment claim as Count VI to avoid confusion.

[8] Though not cited in the Complaint, the Court assumes Plaintiff is seeking relief under the Federal Declaratory Judgment Act, 28 U.S.C. § 2201. *See* ECF No. 1 ¶¶ 56-60.

13

1:09-cv-1121, 2010 U.S. Dist. LEXIS 26539, at *14 (E.D. Va. Mar. 19, 2010). A court may decline to entertain a declaratory judgement claim if it does not "serve a useful purpose in clarifying and settling the legal relations in issue," or if it would not "terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding." *Volvo Constr. Equip. N. Am., Inc. v. CLM Equip. Co.*, 386 F.3d 581, 594 (4th Cir. 2004). Courts have recognized that a declaratory judgement does not serve a useful purpose when it seeks to adjudicate existing claims. *Jackson v. Ocwen Loan Servicing*, Civil Action No. 3:15cv238, 2016 U.S. Dist. LEXIS 44367, at *36 (E.D. Va. Mar. 31, 2016); *Metra Indus. v. Rivanna Water & Sewer Auth.*, Civil Action No. 3:12CV00049, 2014 U.S. Dist. LEXIS 21568, at *6 (W.D. Va. Feb. 19, 2014). On the other hand, declaratory judgements may be useful when other forms of relief are impractical. *See Davison v. Loudoun Cty. Bd. of Supervisors*, 267 F.Supp.3d 702, 723 (E.D. Va. 2017) (finding a declaratory judgement appropriate when injunctive relief would expose defendant to an unpredictable degree of liability with little corresponding benefit to plaintiff).

Plaintiff seeks a declaratory judgment that "(1) damage to the Birck Building is a result of the premature failure of [Defendant's] Products, and (2) [Defendant] is obligated under the theories of breach of warranty, breach of contract, and indemnification to indemnify . . . [Plaintiff]." ECF No. 1 at ¶ 60. Here, a declaratory judgment would not serve a useful purpose in clarifying and settling the legal relations at issue because the determination of the parties' rights will necessarily be resolved through resolution of Plaintiff's other claims. A declaratory judgment in this case would not guide the parties' future conduct. If Defendant was ultimately found liable to Plaintiff for providing defective paint for the panels, any conduct for which Defendant would be liable has already occurred—there is no behavior that a declaratory

14

judgment could guide. Moreover, if the Birck Building required future remediation, Defendant would be permitted to raise any applicable defenses, such as improper application, rendering a declaratory judgment useless. If the Birck Building did require future remediation, there is nothing Plaintiff could achieve through a declaratory judgment that Plaintiff could not achieve through the doctrines of collateral estoppel or *res judicata.* Accordingly, the Court finds that a declaratory judgment would not be appropriate in this case.

Therefore, the undersigned **RECOMMENDS** Defendant's Motion to Dismiss Count VI be **GRANTED** and **DISMISSED WITH PREJUDICE,** as any amendment would be futile.

## IV. RECOMMENDATION

For the reasons discussed above, the undersigned recommends that Defendant's Motion to Dismiss, ECF No. 10, be **GRANTED** as to Counts II and VI and that those Counts be **DISMISSED WITH PREJUDICE**; be **GRANTED** as to Counts IV and V and that those Counts be **DISMISSED WITHOUT PREJUDICE**; be **DENIED** as to Count III; and that Plaintiff be **GRANTED** leave to amend with respect to Counts IV and V.

## V. REVIEW PROCEDURE

By receiving a copy of this Report and Recommendation, the parties are notified that:

1. Any party may serve on the other party and file with the Clerk of the Court specific written objections to the above findings and recommendations within fourteen days from the date this report and recommendation is mailed to the objecting party, *see* 28 U.S.C. § 636(b)(1)(C); Federal Rule of Civil Procedure 72(b), computed pursuant to Federal Rule of Civil Procedure Rule 6(a). A party may respond to another party's specific written objections within fourteen days after being served with a copy thereof. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).

2. The Chief United States District Judge shall make a de novo determination of those portions of this report and recommendation or specified findings or recommendations to which objection is made. The parties are further notified that failure to file timely specific written objections to the above findings and recommendations will result in a waiver of the right to appeal from a judgment of this Court based on such findings and recommendations. *Thomas v. Arn*, 474 U.S. 140 (1985); *Carr v. Hutto*, 737 F.2d 433 (4th Cir. 1984); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).

The Clerk is **DIRECTED** to forward a copy of this report and recommendation to the counsel of record for the Plaintiff and Defendant.

/s/ Lawrence R. Leonard
Lawrence R. Leonard
United States Magistrate Judge

Norfolk, Virginia
November 20, 2019